# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **JAMES BUECHLER,** | * |  |
| **Plaintiff** | * |  |
| **v.** | * | **CIVIL NO.  JKB-11-3280** |
| **YOUR WINE & SPIRIT SHOPPE, INC.,** | * |  |
| **Defendant** | * |  |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff James Buechler sued Defendant Your Wine & Spirit Shoppe, Incorporated ("YWWS"), for a claimed violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*  (Compl., ECF No. 1.)  Buechler alleged that YWWS was the operator of an automated teller machine ("ATM") and that it improperly charged a $2.00 fee for Buechler's withdrawal of funds from his bank account with a financial institution because YWWS failed to display on or about the ATM a notice that YWWS may charge a fee for an electronic fund transaction.  (Compl. ¶¶ 21, 24-28.)  Pending before the Court is YWWS's motion to dismiss for failure to state a claim or, in the alternative, motion for summary judgment.  (ECF No. 4.)

The only ground for dismissal for failure to state a claim is YWWS's argument that Buechler's complaint did not name the correct legal entity since he sued "Your Wine & Spirit Shoppe" rather than "Your Wine & Spirit Shoppe, Inc."   (Def.'s Mot. Supp. Mem. 8.)  Otherwise, YWWS argues it is entitled to summary judgment because no genuine dispute of material fact exists and it is entitled to judgment as a matter of law.  The argument regarding the correct name of the legal entity to be sued was obviated by Buechler's filing of an amended complaint (ECF No. 6), which also contained other allegations regarding YWWS's response to

the prelitigation request by Buechler for settlement.   Treating YWWS's filing as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it will be denied as moot.   Considering the filing as a motion for summary judgment, the motion will be granted.   No hearing is necessary.  Local Rule 105.6 (D. Md. 2011).

## I.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).   The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.   The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).   Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

## II. *Undisputed Facts*

Plaintiff Buechler made an electronic fund transfer on August 6, 2011, at an ATM owned by YWWS at its store in Woodstock, Maryland. (Def.'s Mot. Supp. Mem. 6; Am. Compl. ¶ 24, ECF No. 6.) Buechler did not hold an account with YWWS. (Am. Compl. ¶ 24.) Buechler was charged a $2.00 fee for the ATM transaction. (*Id.* ¶ 26; Def.'s Mot. Supp. Mem. 6.) Before Buechler entered into the transaction, he took pictures of the ATM. (Am. Compl. Exs. 2, 3, & 4; Pl.'s Opp. 9-10, ECF No. 7.) At the time of Buechler's transaction, no notice was posted on or at the ATM indicating the $2.00 fee would be charged. (Def.'s Mot. Supp. Mem. 6; Am. Compl. ¶ 27.)

On August 23, 2011, his attorney, David R. Hoskins, Esquire, wrote a letter to YWWS, notifying it of the lack of required notice on or at the ATM and enclosing a draft complaint with a prayer for relief for actual damages of $1,000, statutory damages of $1,000; costs; and reasonable attorney's fees. (Am. Compl. Ex. 5.) The letter indicated the attorney was prepared to file the complaint within the following two weeks but was extending YWWS "the courtesy of reviewing the complaint before it is filed in order to provide the parties an opportunity to settle this matter without the need for litigation." (*Id.*)

In response, Douglas C. Meister, Esquire, counsel for YWWS, wrote a letter to Hoskins, dated September 2, 2011, informing him that the problem of the missing required fee notice had been remedied and enclosing a check payable to Buechler to reimburse him for the $2.00 fee charged. (*Id.* Ex. 6.) Meister further stated that, because YWWS had corrected the problem by posting the missing notice and by reimbursing Buechler for the amount he alleged he was damaged prior to Buechler's instituting suit, no one was liable pursuant to a "safe harbor" provision in EFTA. (*Id.*) *See* 15 U.S.C. § 1693m(e). Finally, Meister stated that filing a suit

under these circumstances would constitute an act of bad faith or harassment.  (Am. Compl. Ex.

6.)  *See* 15 U.S.C. § 1693m(f).  The instant suit was filed November 16, 2011.

## III.  Analysis

Because the pertinent facts are undisputed, the only remaining issues in the case are

whether YWWS is entitled to the "safe harbor" provision, 15 U.S.C. § 1693m(e), and whether

this lawsuit was instituted in bad faith.

### A.  EFTA's "safe harbor" provision

Under § 1693m(e),

> A person has no liability . . . for any failure to comply with any requirement under this subchapter if, prior to the institution of an action under this section, the person notifies the consumer concerned of the failure, complies with the requirements of this subchapter, and makes an appropriate adjustment to the consumer's account and pays actual damages or, where applicable, damages in accordance with section 1693h of this title.

YWWS argues that its September 2, 2011, letter to Hoskins fulfilled the requirements of

this subsection and, therefore, YWWS is entitled to claim the protection of § 1693m(e).

Buechler argues the § 1693m(e) provision does not apply for three reasons:  (1) because it was

intended only to apply to financial institutions holding customers' accounts, and YWWS, which

is not a financial institution holding customers' accounts, is not protected by it; (2) because, even

if the provision applied to YWWS, Defendant did not fully cure since (a) it cannot prove it made

"an appropriate adjustment to the consumer's account" and (b) it cannot prove it paid Buechler

his actual damages; and (3) if the Court interprets § 1693m(e) in the manner urged by YWWS,

"the result will be that no EFTA cases will ever be resolved through pre-suit settlement

negotiations."  (Pl.'s Opp. 17-24.)

Buechler recounts the history of EFTA, asserting that the original 1978 enactment was

focused exclusively on "financial institutions," as defined in § 1693a(8), and did not include any

4

provisions relating to ATM notice requirements, which were enacted in 1999.  (Pl.'s Opp. 18.)

Although Congress's original intent in 1978 may have been to protect financial institutions from

unwarranted liability when they respond appropriately to customer complaints of improper

account charges, it chose not to limit § 1693m(e)'s protection to "financial institutions" by

granting it, instead, to "a person," a term that surely includes, but is not limited to, "financial

institutions."  That this is the proper interpretation of § 1693m(e) is supported by reference to

another section, which provides,

> If electronic fund transfer services are made available to consumers by a
> person other than a financial institution holding a consumer's account, the Bureau
> [of Consumer Financial Protection] shall by regulation assure that the disclosures,
> protections, responsibilities, and remedies created by this subchapter are made
> applicable to such persons and services.[1]

15 U.S.C. § 1693b(d)(1) (West 2009, Supp. 2011).[2]

Consequently, it would be contrary to Congressional intent, and certainly inequitable, to

limit the "safe harbor" provision of § 1693m only to "financial institutions" and to disallow

YWWS's reliance upon it.  Whether the Bureau of Consumer Financial Protection (or its

predecessor, Board of Governors of the Federal Reserve System) has followed through on this

Congressional mandate is not determinative of the scope of § 1693m(e).  Therefore, the Court

holds § 1693m(e) properly includes within its scope a person, other than a financial institution

---

[1]  The current wording, enacted in 1996 and amended in 2010, of this portion of the
statute varies only slightly from the original 1978 statute and that slight variance does not affect
the Court's analysis.  *Compare* Pub. L. 95-630 § 904(d) *with* Pub. L. 104-193 §§ 891, 907.

[2]  In fact, the section that establishes civil liability for violations of EFTA imposes
liability on "any *person* who fails to comply with any provision of" EFTA.  15 U.S.C.
§ 1693m(a) (emphasis added).  Congress chose the broader word "person" rather than the
narrower term "financial institution" to define who could be held liable and employed the same
terminology in providing protection from liability.  It would be strange if Congress meant
"person" in § 1693m(a) to include ATM operators who were not also financial institutions
holding consumers' accounts but meant "person" in § 1693m(e) to exclude them.

holding a consumer's account, who makes electronic fund transfer services available to consumers.

The next argument by Buechler is that YWWS did not cure according to § 1693m(e)'s requirements.  As set forth in that subsection, a person has no liability for a failure to comply with EFTA if, before litigation is commenced, the person (1) notifies the consumer concerned of the failure, (2) complies with the requirements of EFTA, and (3) "makes an appropriate adjustment to the consumer's account and pays actual damages."[3]  Buechler does not dispute YWWS's compliance with the first and second elements of § 1693m(e), but argues YWWS did not comply with the third element.  His argument on this point is twofold:  one, YWWS is not a financial institution holding his account and therefore is incapable of making an adjustment to his account; and two, it failed to pay his actual damages.  Based on the Court's prior holding that the protection afforded by § 1693m(e) is not limited to financial institutions, but is also available to persons such as YWWS, Buechler's first argument is unconvincing.  Congress does not specify how an adjustment is to be made to a consumer's account and does not require that an adjustment only be accomplished by a financial institution making a bookkeeping entry that results in a credit to a consumer's account.  Although it is true that YWWS has no direct access to Buechler's account, it accomplished the purpose of the statute by sending a check to Buechler to reimburse him for the $2.00 fee.  Buechler could then deposit the check in his account, and the effect would be the same as though the bank had credited his account.  Thus, YWWS satisfied the statute insofar as it required YWWS to make an appropriate adjustment to Buechler's account.

---

[3] Where applicable, a person who is a financial institution must pay damages according to § 1693h rather than "actual damages" as specified in § 1693m(e).

Buechler's second argument on compliance with the statute is that YWWS did not pay him his actual damages because it "ignored the claim for actual damages set forth in the draft complaint forwarded to the Defendant on August 23, 2011." (Pl.'s Opp. 21.)  The language employed by Buechler in the draft complaint was somewhat ambiguous.  Within the body of the draft complaint was the following allegation:

> Plaintiffs [sic] sustained actual damages as the result of the Defendants'
> failure to comply with EFTA including damages for inconvenience, legal fees,
> loss of the use of funds and pre-judgment interest.

(Am. Compl., Ex. 5, ¶ 33.)  Then, without accounting for how he arrived at this figure, Buechler's prayer for relief asked for "[a]n award of actual damages of $1,000.00."  In the demand letter, Buechler did not quantify for YWWS's benefit how much actual damage he sustained as to each of these items, which somehow added up to the round figure of $1,000.00. It is not surprising that YWWS considered only Buechler's claim of actual damages of $2.00 for the ATM fee to be substantiated.

Because this case is now before the Court on a motion for summary judgment, it was incumbent on Buechler to provide proof of his actual damages.  This he has not done.  He has claimed only that it is a jury question but, in so doing, has relied upon his allegations rather than admissible evidence.  Thus, he has failed to show he had actual damages for which YWWS did not compensate him.  As a consequence, he has failed to rebut YWWS's evidence that it complied with the requirements of § 1693m(e).

Buechler's last argument as to why YWWS cannot be protected by § 1693m(e) is a curious one:

> [E]very violation will result in a lawsuit being filed to avoid the tactic adopted by
> Defendant's counsel in this case.  This approach will needlessly increase the costs
> of litigation to consumers and ATM operators (who ultimately will be required to
> pay not only their attorney's fees and costs but also the attorney's fees and costs
> of the consumer) and needlessly add cases that can easily be resolved through

good faith pre-suit settlement negotiations to the already overcrowded District Court docket.

(Pl.'s Opp. 24.)

The notion that every improperly imposed ATM fee will result in a lawsuit is clearly speculative if not farfetched. Perhaps, people like Buechler who are prone to litigation[4] will perceive it to be in their best interest to file suit rather than to seek informal resolution of the problem. But Buechler's claim that all consumers who are incorrectly charged ATM fees will choose to resolve such matters through litigation is supported by neither evidence nor authority. If the objective is only reversal of the fee and reimbursement for actual damages proximately caused by imposition of the fee, then no compelling reason exists not to use avenues outside of litigation to achieve that objective. He does not argue, and logically could not, that "good faith pre-suit settlement negotiations" are undesirable to a consumer in the event an improper ATM fee is imposed by a financial institution holding consumers' accounts. But Buechler nevertheless illogically posits that "good faith pre-suit settlement negotiations" will somehow become undesirable to consumers if ATM operators other than financial institutions holding consumers' accounts are provided the protection of § 1693m(e). Why prelitigation settlement negotiations conducted in good faith should not be desirable in all cases is left unexplained by Buechler's argument. Although it would not be unreasonable for Congress to require consumers to seek informal resolution of improperly imposed ATM fees before initiating federal litigation, it has not yet chosen to do so. At this point, it is up to the consumer whether to seek resolution outside

---

[4] *See, e.g.*, *Buechler v. Money Box, Inc.*, Civ. No. BEL-11-2649 (D. Md.) (allegedly improper ATM fee); *Buechler v. Kearney Federal Savings Bank*, Civ. No. MJG-11-2652 (D. Md.) (same); *Buechler v. Hillmark Corp.*, Civ. No. MJG-11-3282 (D. Md.) (same); *Buechler v. Singh*, Civ. No. CCB-11-3283 (D. Md.) (same); *Buechler v. Fager's Island, Ltd.*, Civ. No. RDB-12-459 (D. Md.) (same); *Buechler v. Empire ATM, LLC*, Civ. No. BEL-12-465 (D. Md.) (same).

of formal litigation, but presumably, the consumer's judgment will be informed by good sense and good faith.

Another point deserves comment.   Buechler's argument necessarily faults "the tactic adopted by Defendant's counsel in this case."   (Pl.'s Opp. 24.)   He apparently refers to the prompt response by defense counsel and reimbursement of the improper $2.00 ATM fee, along with acknowledgement of the missing notice and notification that the problem of proper notice had been remedied.   This "tactic" seems a reasonable response to the facts made known to YWWS, and the Court finds no fault with it.

In the end, Buechler is asking the Court to disregard established canons of statutory construction, which rely upon the plain meaning of the statute, in order to arrive at a strained interpretation of § 1693m(e)'s "safe harbor" provision, and the rationale advanced by Buechler is couched as a policy argument.   He cites no authority for the proposition that a policy argument should trump the plain and logical meaning of a statute.   In reality, Buechler's argument is an implicit threat of future litigation if the statute is not interpreted in Buechler's favor and, as such, is improper.

Considering all of these arguments by Buechler, the Court finds them to be without merit. Thus, based on the evidence before it, the Court concludes that YWWS may properly claim the protection from liability offered by § 1693m(e).   Accordingly, summary judgment will be granted to Defendant YWWS.

### B.   Bad faith

EFTA includes a provision relating to suits brought in bad faith:

> On a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1693m(f).

The bad faith contention here is not entirely unreasonable.  However, the case did present unresolved questions regarding the scope of § 1693m(e), so, the better exercise of discretion is not to find Buechler's case was brought in bad faith or for purposes of harassment.  Accordingly, no basis exists to award YWWS its attorney's fees.

## *IV. Conclusion*

Defendant YWWS has demonstrated this case presents no genuine dispute of material fact and it is entitled to judgment as a matter of law.  A separate order will issue.

DATED this 2<u>nd</u> day of March, 2012.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge